**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| **In re:  ANGELA PEET BULLOCK,** | **Case No. 23-30904-KLP** |
| **Debtor.** | **Chapter 7** |

| | |
|---|---|
| **ANGELA PEET BULLOCK,** | |
| **Plaintiff,** | |
| | |
| **v.** | **Adv. Pro. No. 26-03001-KLP** |
| | |
| **TRUIST BANK,** | |
| **Defendant.** | |

## MEMORANDUM OPINION

This adversary proceeding (this "Adversary Proceeding") came before the United States Bankruptcy Court for the Eastern District of Virginia (this "Court") on June 17, 2026, (the "Hearing") on the *Plaintiff's Motion for Default Judgment* [ECF No. 8] (the "Motion for Default Judgment") filed by Angela Peet Bullock (the "Debtor" or the "Plaintiff"), by counsel, and the *Defendant Truist Bank's Motion to Set Aside Entry of Default and for Leave to File Late Answer and Memorandum of Law in Support* [ECF No. 13] (the "Motion to Set Aside") filed by Truist Bank ("Truist"), by counsel.  Both counsel for the Debtor and counsel for Truist appeared at the Hearing.  At the conclusion of the Hearing, the Court took both motions under advisement.

This Memorandum Opinion sets forth the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").[1] The Court has jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334(b) and the general order of reference of the United States District Court for the Eastern of Virginia dated August 15, 1984.

---

[1]   Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  *See* Fed. R. Bankr. P. 7052.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).  Venue is appropriate in this Court pursuant to 28 U.S.C. § 1409.

## BACKGROUND

On March 15, 2023, the Debtor, by counsel, filed a voluntary petition under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"), thereby commencing the underlying bankruptcy case, Case No. 23-30904-KLP, (the "Bankruptcy Case").  Truist was listed as a creditor in the Bankruptcy Case, *see* Petition at 9, ECF No. 1 at 9, and notice of the Debtor's Bankruptcy Case was provided to Truist, *see* Certificate of Notice at 6, ECF No. 9 at 6.  On April 11, 2023, the Chapter 7 trustee filed a report of no distribution [ECF No. 16].  The Debtor received her discharge on June 20, 2023 [ECF No. 17].  A copy of the Debtor's discharge was sent to Truist on June 22, 2023.  *See* Certificate of Notice at 4, ECF No. 18 at 4.  Truist acknowledges receiving notice of the Bankruptcy Case and entry of the Debtor's discharge.  *See* Landess Decl. ¶¶ 11-12, ECF No. 17 at 2.

On motion of the Debtor, the Court reopened the Bankruptcy Case on January 16, 2026, to permit the Debtor to file this Adversary Proceeding.  By her two-count *Complaint* [ECF No. 1], the Debtor alleges that Truist violated the automatic stay imposed by section 362 of the Bankruptcy Code and the discharge injunction effectuated under section 524 of the Bankruptcy Code.  On January 30, 2026, the Plaintiff, through her agent, timely served process by mailing a copy of the Complaint and the *Summons and Notice in an Adversary Proceeding* [ECF No. 2] via certified mail to Truist Bank, Attn: William H. Rogers, CEO, 214 N. Tryon St., Charlotte, NC 28202.  *See* Local Bankruptcy Rule 7004-2 (requiring delivery or mailing of a summons within 7 days of issuance).  The deadline for Truist to file an answer or other responsive pleading was no later than March 2, 2026.  Fed. R. 7012(a)(1); *see* Summons [ECF No. 2].  Truist failed to do so.  In light of

Truist's inaction, on March 9, 2026, the Plaintiff moved for entry of default and on March 10, 2026, the Clerk's Office entered default against Truist. Fed. R. Bankr. P. 7055; Fed. R. Civ. P. 55(a); Local Bankruptcy Rule 7055-1(A). The Clerk's Office provided notice of the entry of default to Truist on March 11, 2026. Certificate of Notice, ECF No. 6 at 2. Again, Truist took no action.

On April 27, 2026, the Plaintiff filed the Motion for Default Judgment, seeking judgment in her favor on both counts of the Complaint, which the Plaintiff scheduled for hearing on May 20, 2026. The Plaintiff properly served the Motion for Default Judgment and the notice of hearing via certified mail to Truist Bank, Attn: William H. Rogers, CEO, 214 N. Tryon St., Charlotte, NC 28202. *See* Local Bankruptcy Rule 7055-1(B)(2)(c). A week before the scheduled hearing, Truist finally appeared in the Adversary Proceeding and filed its Motion to Set Aside. In the interest of judicial economy, the Court continued the hearing on the Motion for Default Judgment so that both motions could be heard together.

## **MOTION TO SET ASIDE**

Rule 55 of the Federal Rules of Civil Procedure (the "Rules"), made applicable to this Adversary Proceeding by Bankruptcy Rule 7055, requires the Clerk of Court to enter default where "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend. Fed. R. Civ. P. 55(a). A court may set aside entry of default for "good cause." Fed. R. Civ. P. 55(c). "Good cause" is not defined in either the Rules or the Bankruptcy Rules, but is, instead, governed by weighing the following factors: "whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic." *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 204-05 (4th

3

Cir. 2006).  The Fourth Circuit prefers "defaults be avoided and that claims and defenses be disposed of on their merits." *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010).  "The determination regarding whether good cause exists to set aside an entry of default is within the broad discretion of the trial court." *Cheney v. McRae* (*In re McRae*), Case No. 24-71950-FJS, 2026 WL 497197, at *4, 2026 Bankr. LEXIS 444, at *10 (Bankr. E.D. Va. Feb. 20, 2026).

As Truist correctly points out in its Motion to Set Aside, a "meritorious defense showing does not require the moving party to 'establish' the merits of the defenses, rather a moving party need only 'make a proffer of evidence' of law and facts 'by testimony or affidavit' that would permit a finding in his or her favor." Mot. to Set Aside ¶ 22, ECF No. 13 at 6 (quoting *McCain v. Educ. Credit Mgmt. Corp.* (*In re McCain*), 353 B.R. 452, 460 (Bankr. E.D. Va. 2006)); *see also McCullough v. I.P., L.L.C.* (*In re Trexler*), 295 B.R. 573, 578 (Bankr. D.S.C. 2003) ("A proffer of evidence requires more than a mere claim of a defense; rather, it involves the assertion of facts or law by testimony or affidavit, on which the defense is based.").  Truist failed to meet this low burden.

The only testimony or affidavit offered by Truist in connection with the Motion to Set Aside is the *Declaration in Support of Defendant Truist Bank's Motion to Set Aside Entry of Default and for Leave to File Late Answer and Memorandum of Law in Support* [ECF No. 17] (the "Landess Declaration").  The Landess Declaration only addresses why Truist failed to timely respond to the Complaint.  The Landess Declaration is devoid of any information as to why Truist did not violate either the automatic stay or the discharge injunction.  Indeed, as to this factor, Truist only states in its unverified Motion to Set Aside:

> As pleaded in its proposed Answer and Affirmative Defenses, Plaintiff is not entitled to the relief sought in the Complaint because

4

> Truist's actions were not willful, were pursued in good faith, and a fair ground of doubt exists as to whether the alleged conduct was barred by the Debtor's discharge. Truist has meritorious defenses.

Mot. to Set Aside ¶ 23, ECF No. 13 at 7. Truist attached an unsigned, unverified draft of its proposed Answer and Affirmative Defenses to the Motion to Set Aside. Even if the Court were inclined to consider it, the draft answer also fails to refer to any affidavit or other evidence in support of Truist's defenses. *See* Mot. to Set Aside Ex. 1, ECF No. 13 at 17-26.[2] Rather, Truist's barebones proposed answer is similar to that rejected by the United States District Court for the Eastern District of Virginia in *Mayrant v. Norfolk Redevelopment & Housing Authority*, 801 F. Supp. 3d 601 (E.D. Va. 2025). In *Mayrant*, the defendant attached a copy of its proposed answer and affirmative defenses to its motion to set aside default and file a late answer.

> Therein, Defendant does not put forth a single allegation that allows the Court to infer that it has a meritorious defense . . . . Rather, Defendant's proposed Answer amounts to nothing more than "general denials and boiler-plate language regarding [allegedly] applicable defenses[.]" Defendant repeatedly "denies any and all allegations of wrongdoing," but this is not sufficient to constitute a meritorious defense. Nor does Defendant set forth any factual allegations in its briefing that would allow the Court to infer that it has a potentially meritorious defense to Plaintiff's claims. [Defendant] claims that it is seeks to "refute the allegations made by Plaintiff's Complaint," but such statement falls woefully short of

---

[2] The Court is not inclined to give much weight to the proposed Answer and Affirmative Defenses. The draft answer fails to respond to the most basic of factual allegations, such as whether the Debtor had an account with Truist, whether Truist automatically drafted money from the Debtor's account, and whether Truist made post-petition and post-discharge withdrawals from the Debtor's account. *Compare* Compl. ¶¶10-11, 15, 17, 18, 22, ECF No. 1 at 2-5, *with* Mot. to Set Aside Ex. 1 at ¶¶10-11, 15, 17, 18, 22, ECF No. 13 at 19-21. In each such instance, Truist claims that the allegations "refer to a document(s) which speaks for itself," but fails to identify the referenced document(s) or proffer what such document(s) would say.

Even more troubling, the draft contradicts the few sworn facts contained in the Landess Declaration. *Compare* Mot. to Set Aside Ex. 1, ECF No. 13 at 25 ("The Plaintiff is not entitled to the relief sought in the Complaint because Plaintiff failed to provide proper notice to Truist that Plaintiff had filed for bankruptcy protection, or that they had received a discharge under Chapter 7 of the United States Bankruptcy Code."), *with* Landess Decl. ¶¶ 11-12, ECF No. 17 at 2 ("Truist received notice of Plaintiff's bankruptcy case . . . via the Bankruptcy Noticing Center on March 30, 2023 . . . . Truist received notice of Plaintiff's Chapter 7 discharge in her Bankruptcy Case on June 22, 2023.").

establishing a meritorious defense.  Therefore, this factor weighs against setting aside the entry of default.

*Id.* (quoting *Prescott v. MorGreen Solar Sols., LLC*, 352 F. Supp. 3d 529, 536 (E.D.N.C. 2018)) (internal citations to court documents omitted).  Following the District Court's precedent as this Court is obliged to do, Truist's "bare allegations, conclusory assertions, [and] general denials of the plaintiff's claims" are simply insufficient as a matter of law to plead a meritorious defense. *See In re McRae*, 2026 WL 497197, at *6, 2026 Bankr. LEXIS 444, at *16; *see also Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.*, 383 F.2d 249, 252 (4th Cir. 1967) ("We are not persuaded that a bare allegation of a meritorious defense precludes the court, in its discretion, from requiring disclosure of facts to support such a conclusory assertion."). Accordingly, Truist has failed to meet this first factor.

The second factor is whether Truist acted with reasonable promptness in seeking to set aside entry of default, based on the facts and circumstances of this Adversary Proceeding.  *See United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982).  "Within the Fourth Circuit, courts have found that a defendant acted reasonably promptly when waiting seventeen, twenty-one, and thirty-two days after default was entered before attempting to set it aside."  *In re McRae*, 2026 WL 497197, at *4, 2026 Bankr. LEXIS 444, at *11 (internal citations omitted) (collecting cases).  Here, Truist waited sixty-three days after entry of default before filing its Motion to Set Aside, well outside the acceptable range identified in *McRae*.

The case in bar is similar to *McRae* in that both defaulting defendants attempted to excuse their inaction based on an allegation that they did not receive the summons and complaint. However, unlike in *McRae*, where the defendant argued a complete lack of knowledge about the pendency of the suit, here, Truist concedes that it had actual notice of the Complaint no later than March 17, 2026.  Landess Decl. ¶ 6, ECF No. 17 at 2.  Despite having actual knowledge of the

6

Complaint, Truist took no action to vacate entry of default for seven weeks.  Accordingly, the Court finds that Truist failed to act with reasonable promptness and, as such, this factor weighs against setting aside entry of default.

The third factor is whether the defaulting party is personally responsible for their default. "Courts have discretion to deny setting aside entry of default when the party's default was intentional or the result of negligence." *Pinpoint IT Servs., L.L.C. v. Atlas IT Exp. Corp.*, 812 F. Supp. 2d 710, 726 (E.D. Va. 2011).  Truist contends that its response "was inadvertently delayed . . . as it internally processed the Complaint served by certified mail on Truist's CEO," which delay would have been avoided if the Plaintiff had served its registered agent..  Mot. to Set Aside ¶ 24, ECF No. 13 at 7.

Bankruptcy Rule 7004(h) requires service of process be made on federally insured depository institutions, such as Truist, via certified mail addressed to an officer of the institution. Truist does not dispute that the Summons and Complaint were properly served on its Chief Executive Officer pursuant to Bankruptcy Rule 7004(h), only that they were not administered by Truist in a timely manner.  Mot. to Set Aside ¶ 24, ECF No. 13 at 7 ("Nevertheless, the matter was ultimately forwarded by the CEO's office to the legal department and, thereafter, referred to the bankruptcy group.").  Truist's apparent lack of an internal procedure for appropriately and timely responding to complaints properly served in accordance with the Bankruptcy Rules is perplexing. Nevertheless, whether the failure to timely respond was caused by defective internal procedures or by inaction by one or more employees, Truist's default was the result of negligence.

Alternatively, Truist attempts to excuse its delay on the grounds that it had initially referred the matter to proposed outside counsel, but ultimately retained alternative outside counsel on May 4, 2026.  Landess Decl. ¶ 8-9, ECF No. 17 at 2.  This argument is equally unavailing.  A defaulting

7

party is personally responsible where it was "was "clearly aware of [the Debtor's] action against it" but still failed "to obtain local counsel in order to file a timely responsive pleading." *Pinpoint IT Servs., L.L.C.*, 812 F. Supp. 2d at 727. Consequently, this factor also weighs against vacating the entry of default.

The fourth factor is prejudice to the non-defaulting party based on whether the delay "(1) made it impossible for the non-defaulting party to present some of its evidence; (2) made it more difficult for the non-defaulting party to proceed with trial; (3) hampered the non-defaulting party's ability to complete discovery; and (4) was used by the defaulting party to collude or commit a fraud." *Id.* (quoting *Vick v. Wong*, 263 F.R.D. 325, 330 (E.D. Va. 2009)). Simply having to prosecute the case as originally as intended rather than benefitting from the defendant's default is not, in itself, prejudicial. "The requirement that the [plaintiff] advance its case on the merits is not prejudicial but rather 'a burden inherent in prosecuting a lawsuit to conclusion.'" *In re McRae*, 2026 WL 497197, at *9, 2026 Bankr. LEXIS 444, at *27 (quoting *Mangan v. Value Health Care Servs., LLC* (*In re Walnut Hill*), Case No. 16-20960 (JJT), 2017 WL 4653003, at *2, 2017 Bankr. LEXIS 3564, at *4 (Bankr. D. Conn. Oct. 13, 2017)). While vacating entry of default would require her to proceed to trial on the merits, the Debtor has not identified any other form of prejudice she may suffer by vacating entry of default. As such, this factor weighs in favor of granting the Motion to Set Aside.

Although there has not been much opportunity for such, Truist has no history of dilatory action in this Adversary Proceeding aside from its failure to respond to the Complaint. *See McKesson Med.-Surgical, Inc. v. Flower Orthopedics Corp.*, Case No. 3:17-cv-631, 2018 WL 944375, at *7, 2018 U.S. Dist. LEXIS 26127, at *21 (E.D. Va. Feb. 16, 2018) ("[W]here a defaulting party has not engaged in delays preceding the entry of default, courts consider whether

8

the party has acted timely during the pending litigation.").  Finding no other indication of dilatory action by Truist in this case, this factor weighs in favor of granting the Motion to Set Aside.

The final factor is whether other, lesser sanctions are available.  "Courts often consider whether the default could be remedied through requiring the defaulting party to pay the plaintiff's attorneys fees or other monetary sanctions."  *In re McRae*, 2026 WL 497197, at *9, 2026 Bankr. LEXIS 444, at *28.  In many instances, the court awards monetary sanctions to the non-defaulting party.  *See e.g.*, *McKesson Med.-Surgical, Inc.*, 2018 WL 944375, at *7, 2018 U.S. Dist. LEXIS 26127, at *23 (finding lesser sanctions available where the court could order the defaulting party to pay the non-defaulting party their fees and costs associated with seeking entry of default and default judgment).  However, such compensation is not sufficient where there is no meritorious defense to the claims.  *Bank of Southside Va. v. Host & Cook, LLC*, 239 F.R.D. 441, 449, (E.D. Va. 2007).  Truist has failed to identify any evidentiary support for its defenses.  "On this record, no other forms of alternative relief are available."  *Id.*

"The final step is the balancing of the *Payne* factors."  *In re McRae*, 2026 WL 497197, at *10, 2026 Bankr. LEXIS 444, at *28.  "The Court is required to construe all of the 'good cause' factors liberally and to avoid the 'extreme sanction' of default by allowing the party to proceed to defend on the merits."  *Pinpoint IT Servs., L.L.C.*, 812 F. Supp. 2d at 728.  Here, four factors weigh against the Motion to Set Aside.  Most importantly for this Court's analysis, Truist has failed to meet the first factor – the availability of a meritorious defense.  "The consideration of Defendant's meritorious defenses is vital to the analysis because the absence of meritorious defenses makes relief from default pointless."  *Id.* at 724 (collecting cases). Even under the most lenient standards, the proposed Answer does not establish a meritorious defense.  Accordingly, vacating entry of

9

default would be pointless, regardless of the other factors. For these reasons, the Motion to Set Aside will be denied.

## MOTION FOR DEFAULT JUDGMENT

Having now determined that Truist is in default and default should not be vacated, this Court must now determine whether to enter default judgment in favor of the Plaintiff and against Truist. After entry of default, well-pleaded allegations of fact contained in the complaint are assumed to be true. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (first quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); and then citing *Weft, Inc. v. G.C. Inv. Assocs.*, 630 F. Supp. 1138, 1141 (E.D.N.C. 1986), *aff'd sub nom. Weft, Inc. v. Georgaide*, 822 F.2d 56 (4th Cir. 1987) (per curiam)); *In re Ryan*, 472 B.R. 714, 723-24 (Bankr. E.D. Va. 2012); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied."). Taking the allegations as admitted, the court must determine whether the allegations support the relief sought by the complaint. *In re Ryan*, 472 B.R. at 724.

### Count I – Violation of the Automatic Stay

"[T]o recover damages for the violation of the automatic stay, a debtor must prove that (1) the creditor committed an act that violated the stay, (2) the act was willful, and (3) the debtor suffered damages as a result." *In re Payne*, Case No. 20-30524-KLP, 2021 WL 1093944, at *3, 2021 Bankr. LEXIS 700, at *6 (Bankr. E.D. Va. Mar. 22, 2021) (citing *In re Seaton*, 462 B.R. 582, 591 (Bankr. E.D. Va. 2011)). The Complaint sufficiently alleges all three elements support entry of default judgment as to Count I.

First, the automatic stay prohibits "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(6).

10

The Complaint alleges that at the time the Plaintiff filed her underlying bankruptcy case, the Plaintiff owed approximately $380 to Truist on account of an open revolving credit card account. Compl. ¶ 10, ECF No. 1 at 2.  The Complaint further alleges that between the time the Plaintiff filed for bankruptcy on March 15, 2023, and when the Plaintiff received her discharge on June 20, 2023, Truist made three withdrawals from the Plaintiff's deposit account as payment towards the balance of the Plaintiff's credit card.  *Id.* ¶¶ 9, 13, 15, 17, ECF No. 1 at 2-3.

Second, a violation of the automatic stay is willful when the creditor has knowledge of the automatic stay and commits an intentional act that violates the automatic stay.  *In re Payne*, 2021 WL 1093944, at *3, 2021 Bankr. LEXIS 700, at *6 (citing *In re Seaton*, 462 B.R. at 592-93).  The Complaint alleges that Truist had actual knowledge of the Debtor's bankruptcy filing by notification from the Bankruptcy Noticing Center on March 18, 2023.  Compl. ¶ 12, ECF No. 1 at 3.  The Plaintiff further alleges in her Complaint that after receiving such notice, Truist continued to make withdrawals from her deposit account on account of the prepetition debt.  *Id.* ¶¶ 9, 13, 15, 17, ECF No. 1 at 2-3.

Third, the Complaint sufficiently alleges that the Plaintiff suffered damages as a result of Truist's violation of the automatic stay.  The Complaint provides that the unauthorized withdrawals caused the Plaintiff's bank account to have a negative balance and caused her to reduce and/or miss other payment obligations, including her rent payments.  *Id*. ¶ 19, ECF No. 1 at 4.  Additionally, the Plaintiff experienced "significant stress and anxiety," causing mental and physical symptoms including "reduced appetite and an increase in the frequency and severity of migraines."  *Id.* ¶ 23, ECF No. 1 at 5.  For these reasons, the Court finds that the allegations contained in the Complaint are well-pled and support a finding that Truist willfully violated the automatic stay.

11

*Count II – Contempt of the Discharge Injunction*

A discharge order "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any [discharged] debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2). Accordingly, a bankruptcy court may hold a creditor in civil contempt for violating a discharge order when there is "no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order." *Taggart v. Lorenzen*, 587 U.S. 554, 560 (2019). To establish civil contempt in the Fourth Circuit, the complainant must prove by clear and convincing evidence:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) . . . that the decree was in the movant's "favor"; (3) . . . that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) . . . that [the] movant suffered harm as a result.

*Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000) (omissions and alterations in original) (quoting *Colonial Williamsburg Found. v. Kittinger Co.*, 792 F. Supp. 1397, 1405-06 (E.D. Va. 1992)). Applying this standard to the allegations pled in the Complaint, the Plaintiff has sufficiently pled a claim that Truist violated the discharge injunction and should be found in civil contempt.

The Complaint sufficiently alleged "the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge." *Id.* The Plaintiff alleged that the Debtor received a discharge order on June 20, 2023, and that Truist had actual knowledge of the discharge order. Compl. ¶¶ 13-14, ECF No. 1 at 3. The discharge order is a decree in the Plaintiff's favor. *See In re Baek*, 661 B.R. 126, 130 (Bankr. E.D. Va. 2024) ("[T]here is no question that . . . the discharge was entered in [the debtor's] favor."). The Complaint sufficiently alleges that Truist "by its conduct violated the terms of the decree, and had knowledge (at least constructive

12

knowledge) of such violations." *Ashcraft*, 218 F.3d at 301.  The Plaintiff alleges that after receipt of the discharge order, Truist continued to draft the Plaintiff's deposit account as payment toward the discharged credit card debt.  Compl. ¶¶ 15-18, ECF No. 1 at 3-4.  These drafts continued even after Truist informed the Plaintiff that it would cease future withdrawals from the Plaintiff's deposit account for payment on the discharged credit card debt.  *Id.* ¶ 21-22, ECF No. 1 at 5.  Finally, the Complaint sufficiently alleges that the Plaintiff "suffered harm as a result." *Ashcraft*, 218 F.3d at 301.  The Complaint provides that the unauthorized withdrawals caused the Plaintiff's bank account to have a negative balance and caused her to reduce and/or miss other payment obligations, including her rent payments.  Compl. ¶ 19, ECF No. 1 at 4.  Additionally, the Plaintiff experienced "significant stress and anxiety," causing mental and physical symptoms including "reduced appetite and an increase in the frequency and severity of migraines."  *Id.* ¶ 23, ECF No. 1 at 5.  The Plaintiff's allegations are well pled and support a finding that Truist violated the discharge injunction.  Under the facts alleged, there is "no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order." *Taggart*, 587 U.S. at 560.  Accordingly, the Court will enter default judgment in favor of the Plaintiff and against Truist as to Count II of the Complaint.

"After a court grants default judgment, the court must determine appropriate relief." *Mayrant*, 801 F. Supp. 3d at 615.  Unlike liability, allegations related to damages are not automatically deemed admitted.  Fed. R. Civ. P. 8(b)(6); *Alstom Power, Inc. v. Graham*, Civil Action No. 3:15-cv-174 (MHL), 2016 WL 354754, at *2, 2016 U.S. Dist. LEXIS 10112, at *3 (E.D. Va. Jan. 27, 2016).  "Damages must be proven, and a court maintains discretion over how the amount of damages may be appropriately shown." *Transp. Dist. Comm'n Rds. T/A Hampton Rds. Transit v. U.S. Workboats, Inc.*, Civil Action No. 2:21-cv-181 (AWA), 2021 WL 8445262, at

13

*4, 2021 U.S. Dist. LEXIS 258350, at *10 (E.D. Va. Sep. 17, 2021) (citing *JTH Tax, Inc. v. Geraci*,

Civil Action No. 2:14-cv-236 (RAJ), 2014 WL 4955373, at *7, 2014 U.S. Dist. LEXIS 141211, at

*19 (E.D. Va. Oct. 2, 2014)).  As such, even where a trial court enters default judgment as to

liability, "[t]he court may conduct hearings . . . when, to enter or effectuate judgment, it needs

to . . . determine the amount of damages." Fed. R. Civ. P. 55(b)(2)(B).  Accordingly, the Court

will conduct further proceedings to determine the appropriate amount of damages to award.[3]

      A separate Order will issue.

Dated:    July 21, 2026            /s/ Keith L. Phillips
                                 UNITED STATES BANKRUPTCY COURT

                                 Entered on Docket:  July 21, 2026

**Copies to:**

**Stephen L. Flores**
Flores Law, PLLC
530 E. Main St.
Ste. 800
Richmond, VA 23219-2428

**James K. Donaldson**
Troutman Pepper Locke LLP
1001 Haxall Point
Suite 1500
Richmond, VA 23219

---

[3]    The Plaintiff must prove her damages by a preponderance of the evidence. *See In re Nimitz*, No. 19-12741-BFK, 2019 WL 7580141, at *5, 2019 Bankr. LEXIS 3798, at *13 (Bankr. E.D. Va. Dec. 11, 2019) (citations omitted). By her Complaint, the Debtor acknowledges that she thought the withdrawals were payments on an account other than the credit card up until the early fall of 2025, that she only contacted Truist about the withdrawals in November 2025, and that – after being contacted by the Debtor – Truist made only one additional withdrawal on December 9, 2025, less than two months prior to the filing of this Adversary Proceeding. Compl. ¶¶ 17, 20-22, ECF No. 1 at 3-5. As presented in the Complaint, these facts are significantly different than those presented to the Court in *Charity v. NC Financial Solutions of Utah, LLC* (*In re Charity*), Adv. Pro. Nos. 16-03121-KLP, 16-03122-KLP, 16-03150-KLP, 2017 WL 3580173, 2017 Bankr. LEXIS 2293 (Bankr. E.D. Va. Aug. 14, 2017).

14